IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 2:09-CR-00016-WCO |
| VICTOR DOOLEY, | : | |
| | : | |
| Defendant. | : | |

## ORDER

The captioned case is before the court for consideration of the government's "Motion in Limine to Obtain Proffer of Defense Witnesses Testimony, To Limit the Number of Character Witnesses, and to Limit Questioning of Character Witnesses" [69], the government's "Motion in Limine to Preclude Evidence and Argument Designed to Elicit Jury Nullification" [70], defendant's motion to suppress [84], the magistrate judge's January 24, 2011 report and recommendation ("R&R") [110], defendant's "Motion in Limine to Exclude Alleged 404(B) Evidence" [114], defendant's "Motion to Sever Counts One and Two" [115], and defendant's "Motion for a Bill of Particulars" [116].

The original indictment in this case was filed on April 7, 2009, charging defendant with knowingly possessing a destructive device that was not registered to him in the National Firearms Registry and Transfer Record in violation of 26 U.S.C.

§§ 5861(d) and 5871.  After a variety of pretrial matters, defendant failed to appear for his July 6, 2010 trial.  The court issued a bench warrant for his arrest.  Defendant was eventually apprehended the same day in Wilkes County, Georgia, within the jurisdiction of the Southern District of Georgia. During this arrest, a variety of firearms, swords, and ammunition was seized from defendant's vehicle.

On July 13, 2010, the United States filed a superseding indictment which charged defendant with an additional offense: knowingly and willfully failing to appear as required for trial in violation of 18 U.S.C. § 3146(a)(1).  Defendant then filed a motion to suppress evidence seized after he failed to appear for trial, including evidence from a search of his residence and evidence from his arrest on July 6.  This motion was referred to the magistrate judge, who recommended denying it. Defendant also filed several other pretrial motions.  Additionally, two motions in limine filed by the United States prior to defendant's original trial date remain pending.  On April 14, 2010, the court held a hearing on all pending motions.  It will now rule on each.

## I.     R&R on the Motion to Suppress

The magistrate judge recommended denying defendant's motion to suppress. Defendant sought to suppress evidence seized on July 6, 2010, from his residence and vehicle.  The evidence from defendant's vehicle was gathered after defendant was

apprehended in Wilkes County, Georgia.  The evidence included a total of 34 firearms, many of which were loaded, approximately 5,000 rounds of ammunition, and various hatchets, knives, and swords.  The magistrate judge did not address the admissibility of these items because she found that defendant abandoned or withdrew his motion with respect to this evidence.

Defendant disagrees with the magistrate judge's finding that he abandoned or withdrew his motion.  The magistrate judge found that defendant had abandoned his objections because he did not raise them in a post-hearing brief.  Even assuming that the magistrate judge incorrectly found that defendant abandoned his suppression argument, the end result is the same.  Defendant's motion must be denied because the evidence was lawfully seized.

The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. CONST. amend. IV. A traffic stop is considered a seizure under the Fourth Amendment.  *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). But, because a traffic stop is only a limited form of seizure, "it is more analogous to an investigative detention than a custodial arrest." *Id.*  The legality of a traffic stop is thus analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). "According to *Terry*, even in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such

persons are involved in criminal activity." *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). Whether reasonable suspicion exists depends on the totality of the circumstances and the collective knowledge of the officers involved in the stop. *Id.*

The law enforcement officers who stopped defendant's vehicle clearly had reasonable suspicion that defendant was involved in criminal activity because the officers knew that a warrant had been issued for defendant's arrest. The criminal conduct underlying this warrant was defendant's failure to appear at his federal trial. The nature of this crime was continuing as long as defendant failed to appear. Thus, when officers recognized defendant and his vehicle, they clearly had reasonable suspicion to initiate a stop.

This result is supported by Eleventh Circuit precedent. In *United States v. Cotton*, 721 F.2d 350, 351 (11th Cir. 1983), police officers were aware that there was an outstanding arrest warrant for the defendant, and the officers had been told by an informant that the defendant was planning to transport stolen vehicles into the state. On the basis of this information, the Eleventh Circuit concluded that an investigative stop was justified on two independent grounds: (1) that criminal activity was in progress, or (2) that the defendant, who was subject to an outstanding arrest warrant, was inside one of the vehicles. *Id.* Similarly, because law enforcement officers in this

4

case knew of defendant's outstanding arrest warrant and knew that criminal activity was in progress so long as defendant remained a fugitive, they could lawfully stop his vehicle.

The stop of defendant's vehicle was thus lawful. Subsequently, he was properly arrested pursuant to the outstanding arrest warrant. As defendant was arrested, law enforcement officers noticed a firearm in plain view inside his vehicle, a pickup truck. (R&R 9 n. 2.) Eventually, the truck's passenger compartment and bed were searched and all of the weapons at issue were discovered.

The seizure of these weapons was lawful under two separate exceptions to the warrant requirement. First, the weapons inside the truck's passenger compartment were lawfully seized pursuant to a search incident to arrest. "When officers lawfully arrest an automobile occupant, they may search the passenger compartment of the automobile as a contemporaneous incident of the arrest, and they also may examine the contents of containers found in the automobile." *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1222 (11th Cir. 1993) (citing *New York v. Belton*, 453 U.S. 454, 460 (1981)). Defendant was a lawfully arrested automobile occupant and the search of his pickup truck was thus a justifiable search incident to arrest. Moreover, "[t]he purpose for a search incident to arrest is to find weapons that the suspect may use to injure police officers and to collect and preserve evidence." *Diaz-Lizaraza*, 981 F.2d at

5

1222.  Here, the law enforcement officers who arrested defendant testified that they "had received information from [defendant's] wife that [it was] a possibility that [defendant] may do harm to law enforcement."  (Suppression Hearing Trans. 71.) Thus, this search and seizure clearly effectuated the purposes of the search incident to arrest exception.

Secondly, the search of the truck's bed was lawful under the "automobile exception."  The "automobile exception" provides that a vehicle may be searched without a warrant when there is probable cause to believe that contraband or evidence of a crime is located therein.  *Chambers v. Maroney*, 399 U.S. 42, 48 (1970).  Two requirements must be met before this exception applies: (1) the vehicle must be "readily mobile";  and (2) there must be probable cause for a search.  *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003).  There is no dispute in this case that defendant's vehicle was operational and was thus "readily mobile."  Additionally, since "under the totality of the circumstances, there [was] a fair probability that contraband or evidence of a crime [would] be found in [defendant's] vehicle," there was sufficient probable cause to justify the search.  *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006).  Law enforcement officers knew that defendant had previously been arrested for possessing destructive devices, had observed weapons in plain view in the passenger compartment and bed of his truck, and had been warned

that defendant was possibly planning to harm law enforcement officers.  Under these circumstances, there was adequate probable cause to justify a search of the truck's bed.  *See United States v. Johns*, 469 U.S. 478, 480-81, 487 (1985) (holding that probable cause existed to search the beds of two pickup trucks after customs officers observed packages in the beds of the trucks that looked like smuggled marijuana); *United States v. Kalie*, 538 F.2d 1201, 1203 (5th Cir. 1976) (holding that marijuana debris and portions of foil-wrapped packages in plain view in the bed of a pickup truck constituted sufficient probable cause to authorize a search under the automobile exception).[1]  Thus, defendant's motion to suppress with respect to the weapons seized from his truck must be denied.[2]

Defendant also sought to suppress evidence seized from a search of his residence.  The magistrate judge recommended denying this claim.  Defendant objects to this recommendation.

A search of defendant's residence in Crawford, Georgia, was conducted on July 6, 2010, after he failed to appear for his trial.  After the bench warrant was issued for

---

[1] Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, constitute binding precedent for the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] Although the court determines that this evidence should not be suppressed under the Fourth Amendment, this ruling is largely academic, because, as explained later in this order, evidence of these weapons should be excluded under Federal Rule of Evidence 403.

defendant's arrest, federal agents traveled to his home in Crawford, Georgia, where they found a note on the door stating that defendant was out of town. Next, the agents traveled to an address in Greensboro, Georgia, associated with defendant and his wife. At this address, agents encountered defendant's wife, Susan Dooley. Ms. Dooley agreed to return with the agents to the Crawford, Georgia residence. She also executed a consent to search form for that residence. Agents searched the residence pursuant to this consent and discovered a letter written by defendant to his wife, a check, and a photograph. All three items were found in the drawer of a dresser located in defendant's bedroom.

Defendant claims that the search of the dresser drawer exceeded the scope of Ms. Dooley's consent. According to defendant, Ms. Dooley's consent to search was limited to a determination of whether defendant was present at the residence and whether defendant had stored firearms at the residence. Defendant claims that the search exceeded this consent, because he clearly could not have been hiding in the dresser drawer and because Ms. Dooley never indicated that firearms were contained in the drawer. Since the officers did not have consent to search the drawer and because the evidence in the drawer was not in plain view, it should thus be excluded.

"A search without a warrant based on probable cause" is unreasonable under the Fourth Amendment and hence illegal, "unless the government can show that it

8

falls into one of those limited exceptions recognized by law." *United States v. Campbell*, 920 F.2d 793, 795 (11th Cir. 1991).  One of these exceptions is when a search "is conducted pursuant to voluntary consent." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989).  In order to sustain the validity of a warrantless search based on consent, the government must prove that the consent was voluntary. *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984).

The government has adequately demonstrated that Ms. Dooley's consent to search was voluntary and that Ms. Dooley had authority to consent to a search of the residence.[3]  The only issue is whether the scope of this consent was exceeded in the course of the search.  Ms. Dooley signed a written consent to search form.  This form authorized the search of the residence at 40 Smokey Trail, Crawford, Georgia, including all outbuildings and the main residence.  It contained no limitations, but authorized a "complete search of the property."  However, the magistrate judge found that the scope of Ms. Dooley's consent was limited to "any place within the residence or outbuildings at [the residence] where Defendant could be located or where firearms could be kept," because of testimony that Ms. Dooley gave her verbal consent only for these purposes.  (R&R 16.)

---

[3] Defendant does not object to the findings of the R&R on these points. The fact that defendant left the letter for Ms. Dooley in the drawer clearly indicates that he expected her to have access to that drawer.

9

In order to be considered reasonable, a consensual search must stay within the "terms of its authorization." *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990). The scope of the actual consent provides the "permissible boundaries of a search in the same manner as the specifications in a warrant." *Id.* Accepting the magistrate judge's finding, Ms. Dooley gave general consent to search the residence for defendant and for firearms. "When an individual gives a general statement of consent without express limitations, the scope of a permissible search . . . is constrained by the bounds of reasonableness." *Id.* Based on Ms. Dooley's authorization to search the residence for guns, the court finds that it was reasonable for law enforcement officers to search for guns in the dresser drawer. It is objectively reasonable that a firearm could be stored in a dresser drawer. The search did not exceed the scope of the consent and was thus permissible.

The record does not reflect, as defendant claims, that Ms. Dooley's consent to search only extended to areas where defendant had previously stored firearms. The magistrate judge correctly rejected this argument, and the court similarly rejects it. The R&R will be approved and adopted as the order of the court and defendant's motion to suppress will be denied.[4]

---

[4] Defendant raised several issues in his objections to the R&R that were not addressed by the magistrate judge. Defendant argued that any and all photographs taken of his arrest in Wilkes County should be suppressed. Although it is unclear exactly what photographs defendant seeks to suppress, assuming that the government intends to introduce any such photographs, if these

## II.     Defendant's Motion in Limine to Exclude Rule 404(b) Evidence

Defendant contends that a variety of evidence is inadmissible under Rule 404(b) of the Federal Rules of Evidence and several other provisions.[5]  Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b).  Defendant contends that the following evidence should be excluded as inadmissible character evidence: (1) evidence obtained from the search of his residence; (2) evidence obtained from his vehicle after he was arrested in Wilkes County, Georgia;  and (3) evidence of the underlying facts and circumstances of his arrest in Wilkes County, Georgia.  Defendant also contends that all of this

---

photographs contain images of the suppressed weapons they will not be admissible.  Additionally, defendant claimed that a statement he made during his arrest should be suppressed.  The government has not indicated that it plans to present evidence of this statement. If the government does intend to use this statement, the court will hold a *Jackson-Denno* hearing before trial to determine if the statement is admissible.  *See Jackson v. Denno*, 378 U.S. 368 (1964).

[5] Rule 404(b) evidence is commonly referred to as "other crimes evidence" or "extrinsic offense" evidence. *United States v. Delgado*, 56 F.3d 1357, 1362 and n. 2 (11th Cir. 1995).

information is inadmissible because it is irrelevant and highly prejudicial under Rules

401 and 403.[6]

> A three-part test governs the admissibility of Rule 404(b) evidence:
>
> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc). However,

"evidence of criminal activity other than the charged offense is *not* 'extrinsic' under

Rule 404(b), and thus falls outside the scope of the Rule" in several circumstances.

*United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (emphasis original).

These circumstances include: (1) when an uncharged offense arises out of the same

transaction or series of transactions as the charged offense; (2) when the facts

surrounding an uncharged offense are necessary to complete the story of the charged

offense; or (3) when an uncharged offense is inextricably intertwined with the

evidence regarding the charged offense. *Id.* The inextricably intertwined doctrine

operates where evidence of the uncharged offense forms an "integral and natural part

---

[6] Defendant makes much of the fact that all of this evidence was obtained after the bench warrant was issued for his failure to appear for trial. This distinction is immaterial. The principles governing Rule 404(b) evidence "are the same whether the conduct occurs before or after the offense charged." *United States v. Beechum*, 582 F. 2d 898, 902 n.1 (5th Cir. 1978) (en banc).

of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *United States v. Foster*, 899 F.2d 1049, 1053 (11th Cir. 1989).[7]

The letter, check, and photograph obtained from the dresser drawer are certainly not Rule 404(b) extrinsic evidence. These items are not evidence of an uncharged crime; instead, they are probative of defendant's commission of the offense of failing to appear for trial. Defendant does not explain how this evidence demonstrates a crime other than those charged. Moreover, even if this evidence was considered "extrinsic," it qualifies for an explicit Rule 404(b) exception. The items show defendant's "preparation" and "plan" to flee from his trial and leave the judicial district. They are thus relevant to an issue other than defendant's character.[8] Moreover, there is sufficient proof for a jury to conclude that defendant placed these

---

[7] Defendant encouraged the court to overrule the inextricably intertwined doctrine based on the Seventh Circuit's decision in *United States v. Boone*, 628 F.3d 927, 933 (7th Cir. 2010). In that case, the Seventh Circuit referred to its prior decision in *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010), which invalidated the use of the inextricably intertwined doctrine. The rationale for this decision, however, was that "almost all evidence admitted under this doctrine is also admissible under Rule 404(b), [so] there is often no need to spread the fog of 'inextricably intertwined' over [it]." *Id.* at 718. Moreover, because of the substantial "overlap between the theories of admissibility" under Rule 404(b), the inextricably intertwined doctrine is often redundant anyway. *Id.* at 719. Regardless of the merit of the Seventh Circuit's position, it is not the place of this court to overrule established Eleventh Circuit precedent. In this circuit, the inextricably intertwined doctrine is still binding law and it will be treated as such.

[8] "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

items in the drawer.  And, lastly, under Rule 403, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.  The items are thus admissible.

The evidence seized from defendant's vehicle after he was arrested, which includes a variety of firearms, swords, and ammunition, however, is "extrinsic evidence" under Rule 404(b), because it is evidence of other crimes.  Since defendant was indicted for a federal offense, he was not permitted to possess these weapons.  Thus, the government indicated that defendant may face prosecution in the Southern District of Georgia for his possession of these weapons.  (R&R 3 n. 1.)  Even so, this evidence could potentially be admissible under several exceptions to Rule 404(b).

First, assuming that the uncharged offense is defendant's possession of these weapons, this uncharged offense arose out of his attempt to flee from his trial, a charged offense.  Defendant's possession of these weapons is also likely inextricably intertwined with his failure to appear for trial. Testimony about the weapons found after defendant's arrest for fleeing from his trial could be an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted."  Moreover, defendant's possession of the weapons is admissible for purposes other than impugning defendant's character.  For example,

14

his possession of the weapons arguably demonstrates proof of preparation and intent to commit the offense of failing to appear for trial.

However, the court's Rule 403 analysis indicates that this evidence should be excluded. Rule 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or if admitting the evidence would cause "undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. The evidence that defendant possessed these weapons is arguably probative of defendant's preparation and intent to flee from his trial. But, the probative value, if any, is slight, and the admission of this evidence would create a great danger of unfair prejudice. The first count of the indictment charges defendant with possession of destructive devices, a type of firearm, and the introduction of additional evidence showing that defendant possessed other dangerous weapons could lead the jury to cumulate this evidence or to attribute certain negative character traits to defendant. Moreover, the large quantity of weapons found with defendant, coupled with the highly dangerous and exotic nature of some of these weapons, creates a great risk of unfair prejudice. The court therefore finds that the prejudicial value of this evidence substantially outweighs its probative value and will exclude evidence of the weapons seized from defendant's vehicle after he was arrested in Wilkes County, Georgia.

Defendant is warned, however, that this exclusion is effective only if defendant does not raise the issue during trial, either intentionally or inadvertently.

With respect to the final category of evidence sought to be suppressed, the underlying facts of defendant's arrest, defendant has not adequately specified which facts should be suppressed. The court has concluded that the fact that weapons were seized from defendant during this arrest will be excluded. However, evidence about this arrest that would be otherwise admissible should not be excluded under Rule 404(b). The facts relating to defendant's arrest after failing to appear for his trial, an offense charged in the criminal indictment, are not extrinsic evidence. Moreover, the probative value of these facts are not substantially outweighed by the danger of unfair prejudice. This evidence is admissible.

In accordance with the explanation above, defendant's motion in limine to exclude evidence is granted in part and denied in part.

### III.    Defendant's Motion to Sever Counts One and Two of the Indictment

The original indictment charged defendant with one count of possessing an unregistered destructive device. The superceding indictment charged defendant with two offenses: (1) possessing at least one unregistered destructive device, and (2) failing to appear for trial on a felony in violation of 18 U.S.C. § 3146(a)(1) (the bond-

jumping statute).  Defendant contends that these two offenses should be separated for purposes of trial.

Rule 8 of the Federal Rules of Criminal Procedure allows an indictment or information to charge a defendant in separate counts with two or more offenses, so long as those offenses "are of the same or similar character," "based on the same act or transaction," or "constitute parts of a common scheme or plan."  Even if two or more offenses are properly joined, however, Rule 14 allows a court to separate offenses charged in the same indictment for trial if the joinder of those charges "appears to prejudice a defendant or the government."  Defendant claims that the two charges in the indictment are not properly joined under Rule 8.  Additionally, defendant asserts that joinder of these offenses is highly prejudicial, necessitating severance under Rule 14.

It is clear that the charges are properly joined under Rule 8.  "Bond jumping and the underlying offense are 'connected together' if they are related in time, the motive for flight was avoidance of prosecution of the underlying offense, and custody derived directly from the underlying offense."  *United States v. Gabay*, 923 F.2d 1536, 1539-40 (11th Cir. 1991) (citing *United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir. 1978)).  All these requirements are satisfied in this case.  The two offenses in the indictment are related in time because the defendant's failure to appear for trial

occurred on the date defendant's trial for the first offense, possession of a destructive device, was scheduled to begin. Defendant's motive for flight was obviously to avoid prosecution for the first offense. Moreover, the bond that defendant violated was granted for the first offense. Therefore, joinder of these offenses was proper under Rule 8.

Even assuming that joinder was proper under Rule 8, however, the court has discretion to sever two offenses for trial if trying the charges together would prejudice defendant. *See United States v. Smith*, 918 F.2d 1551, 1559 (11th Cir. 1990) ("When it appears that a defendant is prejudiced by joinder of offenses . . ., a district court may grant a severance."). "The grant or denial of a Rule 14 motion lies within the sound discretion of the trial judge and is reversible only for abuse of that discretion." *United States v. Kabbaby*, 672 F.2d 857, 861 (11th Cir. 1982) (citing *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir. 1980)). A defendant seeking severance "bears a heavy burden in demonstrating clear and compelling prejudice from the inclusion of the count in question 'which could not be alleviated by the trial court.'" *Kabbaby*, 672 F.2d at 861 (quoting *United States v. DeSimone*, 660 F.2d 532, 539 (5th Cir. 1981)). Compelling prejudice exists only when "under all the circumstances of the particular case . . . the jurors [are unable to] follow the court's admonitory

instructions" and keep evidence of the various offenses separate. *Kabbaby*, 672 F.2d at 861 (quoting *United States v. Zicree*, 605 F.2d at 1389)).

Defendant has not met this heavy burden. He claims that "there is real danger that the jury will cumulate evidence among the counts" and that "the Defendant will be unable to testify on one count without incriminating himself on the other." With respect to the first contention, the danger that a jury will cumulate evidence among counts exists in any multi-offense proceeding. The risk is not particularly acute in this case, since most of the evidence of the two offenses is not interrelated. Moreover, the court is confident that the jury will be able to follow instructions to keep this evidence separate. Therefore, defendant has not demonstrated compelling prejudice.

Defendant's second argument that he will be unable to testify about one offense without incriminating himself on the other is similarly unavailing. "[S]everance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not on others." *United States v. Forrest*, 623 F.2d 1107, 1115 (5th Cir. 1980) (citation omitted).[9] When a defendant claims that he is unable to testify about

---

[9] Defendant cites several cases to support his argument that he will be unable to testify about one offense without incriminating himself on the other. These cases, however, provide no support for that position. The first one, *Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964), deals with prejudicial joinder, but it never discusses the problem of joinder and incriminating oneself. The second case, *United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir. 1979), held that when a defendant could not testify about one offense without incriminating himself on others, severance was proper only if the "accused could show the specific testimony he will present about one offense, and his specific reasons for not testifying about others." *Id.* Defendant, however, provided no

one offense because he is being simultaneously tried for a separate offense, a court should consider severance in light of three factors: (1) whether the first offense is clearly distinct in time, place, and evidence from the second offense; (2) whether the defendant established the importance of his proffered testimony regarding the offense about which he is unable to testify; and (3) whether the defendant has a strong need not to testify about that offense. *United States v. Corbin*, 734 F.2d 643, 648-49 (11th Cir. 1984). Although the two offenses in this case are arguably distinct in place and evidence, the other two factors weigh strongly against severance. Defendant has not provided any information about the nature of his proffered testimony or specified which offense he would testify about. He also has not demonstrated a strong need not to testify about one of the offenses. Defendant has "done no more than express a generalized desire to testify as to some counts but not others." *Id.* at 649. Defendant has "not indicated what [he] would have testified to, and whether such testimony

---

information about the specific testimony he would present on any offense, or specific reasons for not testifying about the other. In other words, even if *Bronco* did control the disposition of this issue, and it does not, it would not help defendant. Lastly, defendant cited *United States v. Gunn*, 968 F. Supp. 1089, 1095 (E.D. Va. 1997), which granted a severance of two offenses for trial, but has nothing to do with the issue of self-incrimination. Instead, *Gunn* granted a severance because the defendant was charged with two offenses: possession of intent to distribute crack cocaine and possession of a firearm by a felon. *Id.* at 1092. To prove the second charge, the government would need to introduce proof of defendant's prior felony conviction. Since this prior conviction had nothing to do with the first charge and since the admission of this prior felony conviction would prejudice defendant in the eyes of the jury, the court granted a severance. *Id.* at 1095. Clearly, the issue of self-incrimination raised by defendant is completely distinct from the issue addressed in *Gunn*.

would have been of any particular importance." *Id.*   Defendant's motion to sever must be denied.

### IV.   Defendant's Motion for a Bill of Particulars

Defendant asked the court to compel the government to produce a bill of particulars regarding the specific nature of the unregistered "destructive device" described in count one of the superseding indictment.   Defendant sought: (1) the number of destructive devices the government alleges he possessed; (2) a description of each device; (3) the facts constituting each violation; and (4) the manner in which he possessed the destructive devices.

"A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information *necessary* for trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986) (emphasis original).   "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."   *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985).   A request for a bill of particulars should be granted "where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the

information is essential to the defense." *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985).

The Eleventh Circuit has cautioned against allowing a defendant to use a bill of particulars to defeat the limited nature of criminal discovery. "To allow the bill of particulars to serve as a wholesale discovery device would actually frustrate the federal discovery rule." *Anderson*, 799 F.2d at 1442. Thus, "a bill of particulars is [not] automatically accorded the status of a supplement to an indictment" in the Eleventh Circuit. *Id.*

Under Federal Rule of Criminal Procedure 7(f), the court may direct the government to file a bill of particulars. In this case, though, the government provided a bill of particulars on its own initiative in response to defendant's request. This filing answered each of the inquiries in defendant's motion. The government informed defendant that he would be held accountable for four destructive devices. Each device was described in detail. The facts and time of each violation were provided, along with a description of the manner in which the devices were possessed.

At the hearing on this motion, defendant did not specifically object to the government's bill of particulars. However, defendant contended that the bill of particulars indicated that the indictment was fatally defective. Defendant claimed that the indictment did not provide adequate notice of the charges against him. Thus,

defendant asked the court to dismiss the indictment.  The court will address this argument rather than the initial request for the bill of particulars.[10]

The first count of the indictment charged defendant with knowingly possessing at least one destructive device in violation of 26 U.S.C. §§ 5861(d) and 5871.  Under 26 U.S.C. § 5861(d), it is illegal for a person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.  The penalties for violation of this provision, including a maximum fine of $10,000.00 and a maximum imprisonment of 10 years, are contained in 26 U.S.C. § 5871.  The term firearm, as defined in 26 U.S.C. § 5845(a), includes, among other things, "a destructive device." A destructive device is defined as:

> (1) any explosive incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.  The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any

---

[10] The court notes that defendant's insufficiency argument applies only to the first count of the criminal indictment.  Defendant did not claim that the second count of the indictment was fatally defective.

device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a file which the owner intends to use solely for sporting purposes.

*Id.* at § 5845(f).

Defendant contends that the indictment is unconstitutionally vague because it does not specify the type of destructive device that he is charged with possessing. An indictment is sufficient when it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution of the same offense." *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002). A court must "give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations." *United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003). "If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998). Count one of the indictment charged defendant as follows:

On or about March 27, 2009, in the Northern District of Georgia, the defendant, VICTOR DOOLEY, knowingly possessed at least one (1)

destructive device, and said destructive device was not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5861(d) and 5871.

After reviewing the indictment, the court finds that it is legally sufficient. The indictment specifically referred to and tracked the language of the statute on which it was based and thus provided notice to defendant of the charge to be defended. It also stated the time and place of the alleged violations. *See United States v. Wayerski*, 624 F.3d 1342, 1350 (11th Cir. 2010) (upholding sufficiency of indictment where it tracked language of the statute and alleged the time and place of the violations). Although the indictment did not provide much detail about the type of destructive device defendant possessed, this does not render the indictment insufficient. The text of the statute at issue, 26 U.S.C. § 5861(d), prohibits a person from receiving or possessing an unregistered "firearm." Rather than using this term, the indictment refers to a "destructive device," which is a type of firearm. 26 U.S.C. § 5845(a). Thus, the indictment does not simply repeat the text of the statute, but specifies that the type of firearm at issue is a destructive device.

The only factually analogous authority located by the court supports this conclusion. The Second Circuit upheld an indictment charging a violation of 26 U.S.C. § 5861(d), where the indictment alleged only that the defendant possessed an "explosive bomb." *United States v. Curtis*, 520 F.2d 1300, 1302 (2d Cir. 1975). Like

25

the present case, an "explosive bomb" is a destructive device, which is in turn a type of firearm.  26 U.S.C. §§ 5845(a) and (f).  The *Curtis* panel observed that "[t]he indictment did not simply invoke the term 'firearm' contained in the statute, but rather added the specification that each object was a destructive device, to wit, an explosive bomb." *Id.* (internal punctuation omitted).   This reasoning applies with equal force to this case.  A second similar case, *United States v. Molar*, No. 3:06-CR-129-(01)-RM, 2006 WL 3543577, at *1 (N.D. Ind. Dec. 8, 2006), also reached the same result and upheld the validity of the indictment.  In *Molar*, the defendant challenged the sufficiency of an indictment charging him with possessing "destructive device(s), specifically, improvised explosive devices, not registered to him in the National Firearms Registration and Transfer Record." *Id.*   The court rejected defendant's challenge and held that the indictment was sufficient.

The claimed lack of specificity will not put defendant at risk of double jeopardy, because when determining whether double jeopardy attaches, "the court may refer to the entire record of the prior proceeding and [will] not be bound by the indictment alone."  *United States v. Steele*, 178 F.3d 1230, 1235 (11th Cir. 1999).  Additionally, when the "indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense," the defendant should request a bill of particulars.  *Cole*, 755 F.2d at 760

(quoting *United States v. Crippen*, 579 F.2d 340, 347 (5th Cir. 1978)).   The government has, of its own accord, provided defendant with a bill of particulars setting forth a variety of detailed and specific information about the charged offense. This information provides defendant with all the information essential to his defense. Thus, defendant's request for a bill of particulars is moot and will be denied on that basis.   Additionally, to the extent defendant challenges the sufficiency of the indictment, that challenge is without merit.

### V.    The Government's Pending Motions

Two motions filed by the government before defendant's first trial date are still pending on the court's docket.  The court discussed the substance of each of these motions at the hearing.  The first motion sought to limit the number of character witnesses called by defendant to testify, while the second sought to prevent any "jury nullification" argument.  Defendant's attorney assured the court that he would not call an excessive number of character witnesses.  He also informed the court that he would not make any jury nullification argument.  The court expects defendant's attorney to abide by this promise.

Under these circumstances, the court will grant the government's first motion and will allow defendant to call a maximum of six character witnesses. The government's second motion, seeking to prevent a "jury nullification" argument, will

be denied as moot because defendant's attorney has indicated he will not make such an argument.  To the extent that any "jury nullification" argument is advanced by defendant at trial, however, the government may immediately raise an objection.

### VI.    Conclusion

For the foregoing reasons, the government's "Motion in Limine to Obtain Proffer of Defense Witnesses Testimony, To Limit the Number of Character Witnesses, and to Limit Questioning of Character Witnesses" [69] is hereby **GRANTED** and defendant is allowed to call a maximum of six character witnesses. The government's "Motion in Limine to Preclude Evidence and Argument Designed to Elicit Jury Nullification" [70] is hereby **DENIED** as moot.  The magistrate judge's January 24, 2011 report and recommendation ("R&R") [110] is hereby **APPROVED** and **ADOPTED** as the order of the court.  Defendant's motion to suppress [84] is hereby **DENIED**. Defendant's "Motion in Limine to Exclude Alleged 404(B) Evidence" [114] is hereby **GRANTED** in part and **DENIED** in part.  The motion is granted with respect to the evidence of any weapons, including firearms, ammunition, and swords, seized from defendant's vehicle on July 6, 2010.  The motion is denied in all other respects.  Defendant's "Motion to Sever Counts One and Two" [115] is hereby **DENIED**. Defendant's "Motion for a Bill of Particulars" [116] is hereby **DENIED** as moot to the extent it is construed as a motion for a bill of particulars and

hereby **DENIED** to the extent it is construed as a challenge to the sufficiency of the

indictment.

     **IT IS SO ORDERED**, this 2nd day of June, 2011.


                          s/*William C. O'Kelley*

                          WILLIAM C. O'KELLEY
                          Senior United States District Judge